IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| SUSAN JONES, as Legal Guardian and Next of Friend of J.B., a Minor Child, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV 114-098 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Susan Jones ("Plaintiff"), proceeding on behalf of her grandchild, J.B., ("Claimant") appeals the decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.    **BACKGROUND**

Claimant was born on January 31, 2003. Tr. ("R"), pp. 126. When Claimant was

eight years old, Plaintiff protectively applied for SSI on behalf of Claimant on March 22, 2011, alleging a disability onset date of April 1, 2010. R. 126-32. The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 80-83, 88-91. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 92-94, and the ALJ held a hearing on July 16, 2012. R. 44-77. At the time of the hearing, Claimant was in third grade. R. 53. At the hearing, the ALJ heard testimony from Claimant, who was represented by counsel. Id. On September 24, 2012, the ALJ issued an unfavorable decision. R. 16-31. Plaintiff was nine years old when the ALJ issued his decision. R. 31, 126.

Applying the three-step sequential process required by 20 C.F.R. § 416.924(a), the ALJ found:

1.      The claimant has not engaged in substantial gainful activity since March 22, 2011, the application date (20 C.F.R. §§ 416.924(b) and 416.971 *et seq.*).

2.      The claimant has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), oppositional defiance disorder ("ODD"), and mood disorder, not otherwise specified (20 C.F.R. § 416.924(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 C.F.R. §§ 416.924(d) and 416.926(a)). Thus, the claimant has not been disabled, as defined by the Social Security Act, from March 22, 2011, through September 24, 2012 (20

C.F.R. § 416.924(a)).[1]

R. 24-35. When the Appeals Council denied Plaintiff's request for review on May 16, 2013, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision.

Plaintiff argues the ALJ erred by (1) failing to find that Claimant met or medically equaled ADHD Listing 112.11, (2) failing to find Claimant did not functionally equal the Listings, (3) failing to properly analyze Plaintiff's credibility, and (4) making an improper medical opinion and conclusion about Claimant's progress when using techniques taught by therapists. (See doc. no. 9 ("Pl's Br."), pp. 6-26.) The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 11 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not

---

[1]While Claimant's alleged onset date was April 1, 2010, SSI benefits cannot be paid until the month after an application is filed and all other requirements for eligibility are met. 20 C.F.R. § 416.335. As Plaintiff filed the application on behalf of Claimant on March 22, 2011, the relevant time period under consideration began, at the earliest, in March 2011. See Manzo v. Comm'r of Soc. Sec., 408 F. App'x 265, 267 n.2 (11th Cir. 2011).

decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to

determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  The ALJ Properly Determined that Claimant Did Not Meet, Medically Equal, or Functionally Equal the Listings.

#### 1.  The Three-Step Sequential Process to Evaluate Disability in Children.

A three-step sequential process is used to determine whether a child is disabled. 20 C.F.R. § 416.924. At the first step, the Commissioner must determine whether the child is engaging in substantial gainful activity; if so, the claim is denied. Id. § 416.924(b). At the second step, the Commissioner must determine whether the child has a severe impairment or combination of impairments; if the child does not have any severe impairments, the claim is denied. Id. § 416.924(c). At the third and final step, the Commissioner must determine whether the child's impairments meet, medically equal, or functionally equal the Listings. Id. § 416.924(d). If the child does not have an impairment that meets, medically equals, or functionally equals the Listings, the child will not be found disabled. Id. § 416.924(d)(2).

The child bears the burden of presenting specific medical findings to show he or she meets a Listing. Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that their impairment meets a Listing, a child needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

**2.    Plaintiff Failed to Establish That He Met or Medically Equaled ADHD Listing 112.11.**

Plaintiff asserts the ALJ erred when determining Claimant did not meet ADHD Listing 112.11 because (1) therapist Tiffany Brooks is an "acceptable medical source" who opined Claimant satisfied the criteria for ADHD Listing 112.11, and (2) treating physician Dr. Elizabeth Messulam's findings were "very near in equivalency" in severity to the criteria of ADHD Listing 112.11. (Pl's Br., pp. 24-26.)

With respect to Listing 112.11, Claimant must demonstrate the requirements of both Paragraphs A and B are satisfied. 20 C.F.R. pt. 404, subpt. P, app. 1. § 112.11. Paragraph A requires a claimant to show "Medically documented findings of all three of the following: 1. Marked inattention; and 2. Marked impulsiveness; and 3. Marked hyperactivity." <u>Id.</u> To satisfy Paragraph B, based on his age at the time of the hearing, Claimant must show he met two of the following criteria:

> (a) Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
>
> (b) Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
>
> (c) Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

6

(d) Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 112.02(B)(2)(a-d).

Here, the ALJ determined that Claimant did not meet or medically equal Listing 112.11 because "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." R. 22. Substantial evidence supports this finding.

Ms. Brooks completed a questionnaire stating Claimant satisfied the criteria for both Paragraphs A and B, in part because he satisfied two of the criteria for Paragraph B, sections (b) and (d). R. 329-33. However, Ms. Brooks is not an acceptable medical source. Acceptable medical sources include physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. See 20 C.F.R. § 416.913(a)(1). Ms. Brooks is a therapist. As such she is not considered an acceptable medical source, but instead is an "other source." See 20 C.F.R. § 416.913(d)(1). Indeed, Plaintiff concedes in his reply brief that Ms. Brooks is an "other source." (Doc. no. 13, "Reply Br.," p. 7, n.1.)

An ALJ is permitted to accord less weight to sources who are nonmedical doctors. See Freeman v. Barnhart, 220 F. App'x 957 (11th Cir. 2007) (finding ALJ's decision to assign no evidentiary value to assessment by physical therapist supported by substantial evidence where therapist was not medical doctor and his opinion was contradicted by the record). Here, the ALJ gave Ms. Brooks's opinion that Claimant met Listing 112.11 partial weight only to the extent it was consistent with Dr. Messulam's opinion that Claimant met

only one of the Paragraph B criteria, section (d).  R. 26.  Accordingly, the ALJ's decision to assign Ms. Brooks's opinion partial weight was supported by substantial evidence because she is not a medical doctor and her opinion that Claimant met Listing 112.11 was contradicted by treating physician Dr. Messulam's opinion that Claimant did not meet Listing 112.11.

Nor is Plaintiff's argument that Dr. Messulam's opinions were "near" in equivalency to the criteria for Listing 112.11 sufficient to show that the ALJ erred in finding Plaintiff did not meet or medically equal Listing 112.11.  Indeed, Dr. Messulam opined that Plaintiff only met one of the Paragraph B criteria, that Plaintiff had marked difficulties in maintaining concentration, persistence, or pace.  R. 334-37.  Therefore, Dr. Messulam did not opine that Claimant met or medically equaled Listing 112.11 because he did not satisfy the requirements of Paragraph B.  Id.; 20 C.F.R. pt. 404, subpt. P, app. 1. § 112.11.

Accordingly, the ALJ properly found that no acceptable medical source found Claimant met or medically equaled ADHD Listing 112.11.  Therefore, the ALJ's decision that Claimant did not meet or medically equal ADHD Listing 112.11 is supported by substantial evidence.

**3.    The ALJ Properly Determined Claimant Did Not Functionally Equal the Listings.**

Plaintiff argues the ALJ erroneously concluded Claimant did not have a marked limitation in the functional domains of (1) caring for yourself, (2) acquiring and using information, and (3) attending and completing tasks.  (Pl's Br., pp. 6-8, 20-24.)  Functional equivalence can be found by assessing a child's overall functional limitations that result from

8

the child's severe impairment or combination of impairments. 20 C.F.R. § 416.926a. In determining functional equivalence, the Commissioner must consider the impact of the child's impairment or impairments on six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." Id. § 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. Id. Functional equivalence requires a finding of "marked" limitations in two domains or an "extreme" limitation in one domain. Id. § 416.926a(a).

A marked limitation is one that "interferes seriously" with a child's ability to independently initiate, sustain or complete activities, while an extreme limitation is one that "interferes very seriously" with a child's ability to initiate, sustain, or complete activities. Id. §§ 416.926a(e)(2)-(3). However, a rating of extreme is reserved for only the "worst limitations," although this "does not necessarily mean a total lack or loss of ability to function." Id. § 416.926a(e)(3).

> **a. Substantial Evidence Supports the ALJ's Finding that Claimant Does Not Have a Marked Limitation in the Domain of Caring For Yourself.**

Plaintiff asserts the ALJ erred in finding that Claimant did not have a marked limitation in the functional domain of caring for yourself because the ALJ (1) did not evaluate or show good cause for giving no weight to Dr. Messulam's opinion in her June 12, 2012 Medical Source Statement that Plaintiff has a marked limitation in this domain, (2) did not evaluate Dr. Messulam's notes in her June 2012 Medical Source Statement that Claimant

has a history of mood disorder and was exhibiting suicidal ideations and dangerous and potentially self-injurious activities in 2010, (3) failed to consider Claimant's destruction of property in this domain, and (4) omitted evidence from Claimant's disability report completed by Plaintiff that Claimant is unable to tie his shoes and puts his clothes on backwards.

The domain of caring for yourself considers how well a child maintains a healthy emotional and physical state, including how well they cope with their physical and emotional wants and needs, how they cope with stress and changes in their environment; and whether they take care of their own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The relevant Social Security regulation provides as follows with respect to school age-children ages six to twelve:

> You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

20 C.F.R. § 416.926a(k)(2)(iv). The regulation also lists the following as examples of limited functioning in caring for yourself, but these examples do not necessarily describe a marked or extreme limitation: "(i) You continue to place non-nutritive or inedible objects in your mouth; (ii) You often use self-soothing activities showing developmental regression (e.g., thumbsucking, re-chewing food), or you have restrictive or stereotyped mannerisms

(e.g., body rocking, headbanging); (iii) You do not dress or bathe yourself appropriately for your age because you have an impairment(s) that affects this domain; (iv) You engage in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take your medication), or you ignore safety rules; (v) You do not spontaneously pursue enjoyable activities or interests; (vi) You have disturbance in eating or sleeping patterns." 20 C.F.R. § 416.926a(k)(3).

Here, the ALJ properly found that Claimant had a less than marked limitation in the domain of caring for yourself. R. 27.

### i. The ALJ Properly Considered the Findings of Dr. Messulam in her June 2012 Medical Source Statement.

In terms of functional limitations, Dr. Messulam opined Claimant had a moderate limitation in attending and completing tasks, and a marked limitation in (1) interacting and relating with others, and (2) the ability to care for oneself. R. 25, 338-40. The ALJ assigned the opinions in Dr. Messulam's Medical Source Statement partial weight. R. 25-26. The ALJ gave controlling weight to Dr. Messulam's opinion that Claimant had marked limitation in interacting with others because it was consistent with her treatment notes and the record as a whole, and to Dr. Messulam's opinion that Claimant had marked difficulties in maintaining concentration, persistence, or pace because Ms. Brooks also found this. R. 26. Therefore, the ALJ impliedly gave no weight to Dr. Messulam's opinion in the Medical Source Statement that Claimant had a marked limitation in the domain of caring for yourself. Here, the Court finds that the ALJ relied on substantial evidence in giving partial weight to Dr. Messulam's opinion.

Plaintiff asserts the ALJ (1) did not articulate good cause to reject Dr. Messulam's opinion Claimant has a marked limitation in the domain of caring for yourself; (2) did not use the mandatory regulatory six-factor analysis to assess Dr. Messulam's opinion; (3) cited the wrong exhibit when providing partial weight to Dr. Messulam's medical source statement; (4) omitted Dr. Messulam's notations in her Medical Source Statement that Claimant has a history of mood disorder and is on Risperdal "to help with his mood swings, irritability, physical aggression/violent behavior and also psychotic symptoms. He was also having [suicidal ideation] and was running out into the street"; and (5) omitted Dr. Messulam's notation that Claimant's ADHD medication was increased in March 2012 due to an increase in symptoms noticed by his teacher. (Pl's Br., pp. 6-13.)

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (ruling that the ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (same).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th

Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding her daily activities).

Plaintiff's first two criticisms are that the ALJ did not (1) establish good cause for rejecting Dr. Messulam's finding of marked limitation in the domain of caring for yourself; and (2) use the regulatory analysis contained in 20 C.F.R. § 416.927(c)(1)-(6) to evaluate the opinion, which Plaintiff states is mandatory. In Davis v. Comm'r of Soc. Sec., 449 F. App'x 828, 832 (11th Cir. 2011), the Eleventh Circuit stated that, "[t]he ALJ is to consider a number of factors in determining the weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." 449 F. App'x at 832 (citing 20 C.F.R. § 416.927). If the ALJ disregards the treating physician's opinion, he must articulate "good cause" for doing so, which "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id. at 833.

Here, the ALJ acknowledged Dr. Messulam's opinion in this domain, R. 25, 30, but gave it no weight because, unlike her opinion that Claimant's impairments caused a marked

13

limitation in interacting with others, it was inconsistent with her treatment notes.  R. 26.

Specifically, the ALJ found that at an initial examination with Dr. Messulam in August 2010,

Claimant was fidgety, but overall cooperative and easily engaging, with coherent speech,

logical and organized thoughts, and no evidence of thought disorder.  R. 25, 259.

Additionally, Claimant denied psychotic features and suicidal and homicidal ideations.  Id.

From August 2010 through July 2012, Dr. Messulam opined that Claimant's Global

Assessment of Functioning ("GAF") scores ranged from 50 to 57.  R. 25, 249, 252-53, 256,

259, 297, 300, 302, 304, 345, 350, 352, 354, 356-57, 360-61, 364.  GAF scores of 51 to 60

indicate moderate symptoms or moderate difficulty in social, occupational, or school

functioning.  See Stone v. Comm'r of Soc. Sec., 586 F. App'x 505, 509 n.2 (11th Cir. 2014)

(citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32, 34

(Text Revision 4th ed. 2000)).  The ALJ also found that Dr. Messulam consistently noted

that Claimant was doing well in school behaviorally and academically, even receiving a

grade of "A" in conduct in February 2011.  R. 25, 249, 342-45.

Nor did the ALJ find Dr. Messulam's opinion consistent with the record as a whole.

R. 26.  When assessing this domain, the ALJ also noted that in a March 2011 questionnaire,

Shetina Roulhoc, Claimant's first grade teacher, noted that she observed no problems in the

domain of caring for yourself.  R. 30, 191-98.  Furthermore, the ALJ considered the 2011

opinions of state agency consultants Drs. Allen Carter and Thomas McIntyre, who

respectively opined Claimant had no or a less than marked limitation in this domain.  R. 26,

263, 309.  An ALJ may give state agency opinions great weight if substantial evidence

supports them.  SSR 96-6p, 1996 WL 374180; Jarrett v. Comm'r of Soc. Sec., 422 F. App'x

14

869, 872-74 (11th Cir. 2011) (concluding ALJ properly gave more weight to non-examining consultants' opinions over a treating physician's opinion). The ALJ afforded both opinions great weight because they were supported by the record. R. 26. Thus, the ALJ articulated good cause for disregarding Dr. Messulam's opinion and therefore he properly evaluated the opinion in accordance with § 416.927(c). See Davis, 449 F. App'x at 832; Lewis, 125 F.3d at 1440.

Plaintiff's third argument is that the ALJ did not assign any weight to Dr. Messulam's Medical Source Statement because when the ALJ stated he gave Dr. Messulam's Medical Source Statement partial weight he cited to Exhibit 9F, which are treatment notes, rather than the Medical Source Statement at Exhibit 13F. (Pl.'s Br. at 11). However, the ALJ's citation is clearly a typographical error because the ALJ cited Exhibit 13F when he summarized Dr. Messulam's findings in her Medical Source Statement in the previous paragraph of his opinion. R. 25-26. Additionally, the ALJ was plainly discussing Dr. Messulam's Medical Source Statement and not her treatment notes because he stated he was assigning the "Medical Source Statement" partial weight and cited Dr. Messulam's findings from the Medical Source Statement, not any findings from her treatment notes. Id.

Nor do Plaintiff's fourth and fifth arguments show that the ALJ's finding is not supported by substantial evidence. While Plaintiff's fourth argument is that the ALJ did not explicitly discuss Dr. Messulam's notation that Claimant had a history of mood disorder, the ALJ did, in fact, discuss this mood disorder. The ALJ cited records from Valley Behavioral Health Services showing Claimant was hospitalized in April 2010 for mood instability, homicidal ideation, property destruction, and anger outburst. R. 24, 229-231. Indeed, the

ALJ also noted Claimant was diagnosed with mood disorder, not otherwise specified, and upon discharge (1) he denied suicidal or homicidal ideation, (2) his mood was improved, and (3) he was prescribed Risperdal. Id.

Plaintiff is correct in her fifth argument that the ALJ did not cite Dr. Messulam's notation that Claimant's was prescribed a higher dose of ADHD medication in March 2012 due to an increase in ADHD symptoms noticed by his teacher. However, the ALJ did consider Dr. Messulam's note that Claimant's ADHD symptoms were better controlled with prescription medications. R. 25. Moreover, Plaintiff fails to explain how these notations demonstrate greater limitations than the ALJ found. Indeed, despite Plaintiff's argument to the contrary, Social Security Ruling 96-2P provides it is not always necessary to address each opinion provided by a single treating source. See Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions, SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996) ("Adjudicators must use judgment based on the facts of each case in determining whether, and the extent to which, it is necessary to address separately each medical opinion from a single source.")

In sum, the ALJ properly assigned Dr. Messulam's May 2012 Medical Source Statement partial weight after considering all the evidence of record and finding her opinion that Claimant has a marked limitation in the domain of caring for yourself unsupported by Dr. Messulam's own treatment notes and other substantial evidence. Lewis, 125 F.3d 1440.

ii.    **The ALJ Properly Disregarded Evidence of Claimant's Property Destruction, Violent Behavior at Home, and Inability to Dress.**

Plaintiff also asserts that, in finding no marked limitation in the domain of caring for yourself, the ALJ failed to consider evidence of (1) Claimant's property destruction, (2) Claimant's violence at home, and (3) Claimant's inability to properly dress himself found in disability reports completed by Plaintiff.  (Pl.'s Br. at 7-8.)

Plaintiff is correct that the ALJ did not cite every time she reported Claimant destroyed property in Plaintiff's disability reports.  However, the ALJ did note that (1) Claimant was "engaged in property destruction" before his April 2010 hospitalization, and (2) Plaintiff testified at the hearing that Plaintiff pulled a television cable out of the wall on one occasion at her home.  R. 24, 69, 229.  An ALJ is not required to refer specifically to every piece of evidence in his  decision.  See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  Moreover, while this evidence might demonstrate a danger to property, it does not demonstrate a marked or significant danger to Claimant.  Indeed, while Plaintiff cites SSR 09-7p for the proposition that property destruction is an example of a limitation in the domain of caring for  yourself, all of the examples in SSR 09-7p pertain to a claimant harming himself and not property.  See Title XVI: Determining Childhood Disability-the Functional Equivalence Domain of "Caring for Yourself", SSR 09-7P (S.S.A. Feb. 17, 2009), 2009 WL 396029, at *6.   As to harming himself, the ALJ found that Claimant repeatedly denied suicidal ideations after his initial hospitalization in 2010, including to Dr. Messulam.  R. 24-25, 259.

Additionally, Plaintiff alleges the ALJ did not consider several reports by Plaintiff and Claimant's step-grandfather that Claimant was violent at home. The evidence Plaintiff cites includes: (1) Plaintiff's statements in August and December 2011 disability reports that Claimant had an "increase in anger and violence, violent mood swings," and "cannot keep friends because he always wants to fight them;" (2) Plaintiff's report to consultative examiner Dr. Gerald Augustin in November 2010 that Claimant "frequently fights with his siblings and other children in his neighborhood;" (3) Claimant's step-grandfather's report to Dr. Messulam on February 2011 that Claimant "frequently has temper outbursts," which Claimant told Dr. Messulam is caused when "his sister makes him upset;" (4) Claimant's step-grandfather's report to Dr. Messulam in March 2011 that Claimant was "frequently having temper outbursts" at home; (5) Plaintiff's report to Dr. Messulam in April 2011 that Claimant "has significant behavior problems" at home and "has anger outbursts;" (6) Claimant's step-grandfather's report to Dr. Messulam in July 2011 that Claimant "is frequently very irritable," and he "at times has to send [Claimant's] friends home since [Claimant] has difficulties getting along and playing with others;" and (7) Claimant's step-grandfather's report to Dr. Messulam in August 2011 that Claimant is "frequently fighting and hitting his sister" and has difficulty getting along with neighborhood kids. R. 177, 180, 185, 241, 249, 297, 299, 301, 304.

However, in these same records, Plaintiff and Claimant's step-grandfather's also deny on several occasions that Claimant had been violent at home or state that his aggressive behavior is decreasing, including: (1) Plaintiff's report to Serenity Behavioral Health Systems in June 2010 that Claimant "is not aggressive since living with her;" (2) Plaintiff's

report to Dr. Messulam in August 2010 that Plaintiff had been displaying increased episodes of anger and aggression, including significant anger outbursts" when he was in the foster home but when he came to live with her and started medication he appeared "to be doing well" and his outbursts appeared to be under much better control with his Risperdal;" (3) Plaintiff's report to Dr. Messulam in September 2010 that Claimant "has been doing significantly well" behaviorally; (4) Plaintiff's report to Dr. Messulam in December 2010 that Claimant had not any "major behavioral problems" at home or at school; (5) Claimant's step-grandfather's report to Dr. Messulam in January 2011 that "at times [Claimant] still has temper outbursts and becomes easily upset, but overall they have not had any major behavioral problems." R. 251, 253, 255, 257, 289.

Additionally, the ALJ noted that Plaintiff testified that Claimant fights (1) "all the time" with his peers and (2) every day with his sister. R. 23-24. Moreover, the ALJ found progress notes from Transitional Family Services include statements from Claimant and his family that Claimant was getting along better with his sister and fighting less often. See 24-25, 377, 380, 410, 490, 499, 574, 577, 609, 620, 637, 687. Indeed, on several of these occasions, Claimant reported he was using the technique of walking away and ignoring his sister when she agitated him. R. 24-25, 490, 499, 577. In December 2011, Ms. Brooks observed Claimant was "slowly making progress." R. 25, 637. Additionally, in June 2012, Claimant's uncle told therapists that he "wasn't aware of any behavioral problems in the home lately" and in July 2012, Claimant's grandfather told therapists that Claimant still had anger issues although he showed improvement. R. 25, 574, 577. Furthermore, to the extent Plaintiff is arguing that the ALJ completely ignored evidence of Claimant's violent

behaviors, ALJ found that Claimant's fighting with others was relevant in the domain of interacting and relating with others, "[C]laimant's grandmother testified and the evidence of record shows conflict between [Claimant] and his siblings and peers." R. 28.

Lastly, Plaintiff alleges the ALJ did not consider evidence from a disability report completed by Plaintiff in December 2011 that Claimant is unable to tie his shoes and puts his clothes on backwards. R. 188. However, Plaintiff did not testify at the hearing that Claimant is unable to tie his shoes or put his clothes on backwards. Instead, as the ALJ noted, Plaintiff testified that Claimant has difficulty getting ready for school in the morning and requires reminders to take care of his personal hygiene. R. 23, 56-57. Moreover, an ALJ is not required to refer specifically to every piece of evidence in his decision. <u>See</u> <u>Dyer</u>, 395 F.3d at 1211. Furthermore, evidence from the record repeatedly demonstrates that Plaintiff was appropriately groomed at examinations and counseling visits. R. 241, 249, 251, 253, 255, 259, 297, 299, 301, 304, 323, 348, 350, 352, 354-55, 357, 360-61, 363, 425.

Thus, substantial evidence supports the ALJ's conclusion Claimant had less than marked limitations in the domain of caring for yourself.

> **b. Substantial Evidence Supports the ALJ's Finding that Claimant Does Not Have a Marked Limitation in the Domain of Acquiring and Using Information.**

Plaintiff asserts the ALJ erred in finding that Claimant does not have a marked limitation in the functional domain of acquiring and using information because the ALJ (1) concluded accommodations received by Claimant in school resulting in the claimant "performing fairly well," (2) did not consider the opinions of Dr. Messulam and Ms. Brooks that Claimant had "marked" difficulties in "maintaining concentration, persistence, or pace"

and "marked inattention, marked impulsiveness, and marked hyperactivity." (Pl's Br. 20-21.)

The domain of acquiring and using information considers how well a child acquires or learns information and how well he uses the information he has learned. See 20 C.F.R. § 416.926a(g). The relevant Social Security regulation provides:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv). The regulation lists the following as examples of limited functioning in acquiring and using information, but these examples do not necessarily describe a marked or extreme limitation: "(i) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night; (ii) You cannot rhyme words or the sounds in words; (iii) You have difficulty recalling important things you learned in school yesterday; (iv) You have difficulty solving mathematics questions or computing arithmetic answers; (v) You talk only in short, simple sentences and have difficulty explaining what you mean." 20 C.F.R. § 416.926a(g)(3).

Here, the ALJ found that Claimant had a less than marked limitation in this domain. R. 27. The ALJ considered that in a February 2011 questionnaire, Ms. Roulhoc, Claimant's

first grade teacher, observed Claimant had no problems or no more than slight problems in eight of the ten activities in this domain. R. 27, 192. While Ms. Roulhoc noted that Claimant had serious problems in reading and comprehending written material, she also stated that Claimant was "eager to learn" and often performed "fairly well" with support from her and/or his peers. Id. She noted Claimant did not need daily help but he did receive help two to three times a week and his reading tests were differentiated to better serve him. Id.

Contrary to Plaintiff's first argument, SSR 09-3p does not require a finding of marked limitation if a claimant is provided some accommodations in school. This regulation merely provides as follows: "Other indications in school records that a mental or physical impairment(s) may be interfering with a child's ability to acquire and use information include, but are not limited to . . . . Other accommodations made for the child's impairment(s), both inside and outside the classroom, such as front-row seating in the classroom, more time to take tests, having tests read to the student, or after-school tutoring." Soc. Sec. Ruling, SSR 09-3p.; Title Xvi: Determining Childhood Disability-the Functional Equivalence Domain of "Acquiring & Using Information", SSR 09-3P (S.S.A. Feb. 17, 2009). Indeed, as the ALJ noted, Ms. Roulhoc stated that Claimant performs "fairly well" with these accommodations and in February 2011, one month before Ms. Roulhoc completed this questionnaire, Dr. Messulam stated that Claimant and Claimant's step-grandfather reported Claimant "continues to do very well academically." R. 25, 27, 192. The ALJ also noted that Plaintiff and Claimant reported to Dr. Messulam in July 2012 that Claimant had been promoted to the third grade. R. 25, 345.

Plaintiff's second argument concerns the ALJ's alleged failure to consider the findings of Dr. Messulam and Ms. Brooks that Claimant had marked limitations in concentration, persistence, or pace and marked inattention, impulsiveness and hyperactivity. However, the ALJ's finding in this domain does not conflict with these conclusions. R. 25-26. Neither source specifically opined as to how Claimant's ADHD or resulting symptoms affected his ability to acquire and use information. R. 329-32, 334-40. Indeed, Dr. Messulam declined to rate Claimant's functioning in this domain. R. 25, 338-39. Additionally, Plaintiff's argument presumes that findings of marked limitations in concentration, persistence, or pace and marked inattention, impulsiveness, and hyperactivity require a finding of marked limitations in acquiring and using information, but she cites no authority for this proposition. (Pl.'s Br. at 20-21.) If this was the case, Dr. Messulam would have identified Claimant as having a marked limitation in acquiring and using information, which she did not. R. 25, 338-39. Additionally, the ALJ noted Dr. Messulam's repeated finding that Claimant's GAF scores ranged between 50 and 57, R. 25, 249, 252-53, 256, 259, 297, 300, 302, 304, 345, 350, 352, 354, 356-57, 360-61, 364, which indicates only moderate symptoms or moderate difficulty in social, occupational, or school functioning. See Stone, 586 F. App'x at 509 n.2 (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)). Furthermore, the ALJ also gave significant weight to assessments provided by State agency consultants Drs. Carter and McIntyre, who opined Claimant had less than marked limitations in acquiring and using information. R. 26, 262, 308.

For all of these reasons, substantial evidence supports the ALJ's finding that Claimant had a less than marked limitation in the domain of acquiring and using information.

      **c.**    **Substantial Evidence Supports the ALJ's Finding that Claimant Does Not Have a Marked Limitation in the Domain of Attending and Completing Tasks.**

Plaintiff asserts the ALJ erred in finding that Claimant does not have a marked limitation in the domain of attending and completing tasks because the ALJ (1) did not consider the opinions of Dr. Messulam and Ms. Brooks that Claimant had "marked" difficulties in "maintaining concentration, persistence, or pace" and "marked inattention, marked impulsiveness, and marked hyperactivity," and (2) did not consider Claimant's diagnosis of ADHD and his multiple medication changes to treat ADHD. (Pl's Br. 22-24.)

The domain of attending and completing tasks considers how well a child is able to focus and maintain attention, and how well he or she begins, carries through, and finishes his or her activities, including the pace at which he or she performs activities and the ease with which he or she changes them. 20 C.F.R. § 416.926a(h); see also SSR 09–4p. Attention involves regulating levels of alertness, maintaining concentration, filtering out distractions, remaining focused long enough to complete tasks, returning to a task to finish it, and changing focus once a task is completed. 20 C.F.R. § 416.926a(h)(1)(i). For school age children, the Commissioner provides the following guidelines:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place

when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv). The regulation lists the following as examples of limited functioning in acquiring and using information, but these examples do not necessarily describe a marked or extreme limitation: "(i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch; (ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects; (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others; (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing; [and] (v) You require extra supervision to keep you engaged in an activity." 20 C.F.R. § 416.926a(h)(3).

The ALJ found that Claimant had a less than marked limitation in this domain. R. 27. The ALJ cited Ms. Roulhoc's observation in her February 2011 questionnaire that Claimant had no serious or very serious problems in this domain. R. 27, 193. The ALJ also noted that Dr. Messulam found only moderate limitations in this domain. R. 28, 339. Additionally, the ALJ noted that Plaintiff testified Claimant "requires reminders in performing his personal care needs." R. 27-28.

Plaintiff argues the ALJ did not specifically discuss Dr. Messulam's and Ms. Brooks' opinions that Claimant had marked limitations in concentration, persistence, or pace, or Claimant's ADHD diagnosis and medication changes he received in his ADHD treatment. Contrary to Plaintiff's argument, the mere fact Claimant was diagnosed with ADHD does not demonstrate a marked limitation in attending and completing tasks because evidence of a

condition is insufficient to show functional limitations imposed by the condition. See Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987) (the mere diagnosis of polymyalgia rheumatica says nothing about why the condition makes it impossible for the claimant to be gainfully employed); McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

Additionally, as the ALJ pointed out, Dr. Messulam repeatedly identified that Claimant's GAF scores ranged between 50 and 57, R. 25, 249, 252-53, 256, 259, 297, 300, 302, 304, 345, 350, 352, 354, 356-57, 360-61, 364, which indicates only moderate symptoms or moderate difficulty in social, occupational, or school functioning and supports her finding that his symptoms from ADHD were moderate. See Stone, 586 F. App'x at 509 n.2 (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)). Furthermore, the ALJ also gave significant weight to assessments provided by State agency consultants Drs. Carter and McIntyre, each of whom opined Claimant had a less than marked limitation in acquiring and using information. R. 26, 262, 308.

Nor does a finding that Claimant has marked limitations in concentration, persistence, or pace and marked inattention, impulsiveness and hyperactivity necessitate a finding that Claimant has a marked limitation in attending and completing tasks. Indeed, Dr. Messulam opined that, despite Claimant's marked difficulties with maintaining concentration, persistence, or pace, he only had "moderate" limitation in attending and completing tasks. R.

25-26, 28, 336, 339. The ALJ also noted Dr. Messulam's opinion in July 2012 that Claimant's attention and concentration were intact. R. 25, 345.

Accordingly, the medical opinions and treatment notes cited by the ALJ provide substantial evidence in support of the conclusion Claimant had less than marked limitations in the domain of attending and completing tasks. R. 27-28.

### B. The ALJ Properly Discredited Subjective Testimony Regarding Claimant's Limitations.

Plaintiff argues the ALJ erroneously concluded that Plaintiff's testimony concerning Claimant's limitations was inconsistent with the record without providing any explicit reasons for rejecting her testimony. (Pl's Br., pp. 13-20.) Plaintiff asserts the ALJ did not discuss or make a credibility finding on the large volume of testimony that showed impaired functioning, including that Claimant: (1) destroys property; (2) has daily anger episodes; (3) had hallucinations; (4) wets his bed; (5) has side effects from his medication including drowsiness and poor appetite; (6) has difficulty waking, dressing, and keeping proper hygiene; (8) does not get along well with his sister or uncle; (9) fights with other children; (10) wants to use sticks and rakes as weapons; (11) strikes his sister; and (12) gets in trouble at school. (Id.) Plaintiff asserts the ALJ merely summarized her testimony and medical records, but did not point to any specific record or evidence that directly refuted her testimony. (Id.)

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical

condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction.  Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence.  Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).  As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer, 395 F.3d at 1210-11 (internal quotation marks and citations omitted).

Here, the ALJ properly reviewed Plaintiff's allegations concerning Claimant's limitations as stated in her testimony at the hearing.  R. 23-24.  Contrary to Plaintiff's assertion, the ALJ explicitly noted in his opinion her testimony that Claimant (1) suffers side effects from his medication, such as sleepiness, poor, appetite, decreased motivation to play outside, and difficulty getting ready in the morning; (2) needs reminders to take care of

his personal hygiene; (3) does not get along well with his peers; (4) fights all the time; (5) likes to control everything; (6) has anger problems with his sister; (7) has destroyed property; (8) receives help in school for reading and math; (9) does not like to follow instructions; (10) has problems focusing and paying attention; and (11) has hallucinations. R. 23, 55-61, 68, 70. Indeed, the ALJ noted the evidence of conflicts with his peers and sister as a basis for finding Claimant had marked limitations in the domain of interacting and relating to others. R. 28.

The ALJ then found Plaintiff's testimony regarding Claimant's daily activities was credible, but her statements concerning the intensity, persistence and limiting effects of Claimant's symptoms were not fully credible. R. 24. The ALJ explicitly referred to the analysis that followed in his opinion as his reasoning for why Plaintiff's testimony was not fully credible and Claimant's impairments did not functionally equal a listing. Id. Indeed, the ALJ discussed the many inconsistencies between Plaintiff's testimony and the medical evidence and school records. R. 24-26.

First, the ALJ noted that while Plaintiff testified Claimant exhibited behavioral problems at home, he did not exhibit significant behavioral problems at school. R. 24-25. In November 2010, Plaintiff informed consultative examiner Dr. Augustin that Claimant's oppositional and aggressive behaviors were primarily limited to the home environment and Claimant did not have any significant behavioral problems at school. R. 24, 241. Dr. Augustin found that, because Claimant was able to avoid aggression with his teachers and peers at school, he needed more structure at home, a clear understanding of how he was expected to behave, consistent and well-defined consequences of his negative behaviors, and

praise for his positive attitudes and behaviors. R. 24, 244. Indeed, the ALJ noted Plaintiff told Dr. Messulam in February 2011 Claimant was doing well academically with no reports of behavioral problems at school and received an "A" in conduct. R. 25, 249. Plaintiff also reported Claimant doing well in school in February 2012 and in July 2012, and that Claimant was promoted to the third grade. R. 25, 342-45.

Second, as to Claimant's behavior at home, the ALJ found that records from November 2010 to July 2012 from Transitional Family Services "show improvement in [Claimant's] behavior towards his siblings when employing behavior modification techniques and skills." R. 25. Plaintiff challenges this statement by the ALJ as an unsupported medical conclusion with no basis in the record. (Pl.'s Br. at 24.) However, progress notes from Transitional Family Services include statements from Claimant and his family that Claimant was getting along better with his sister and fighting less often. See 24-25, 377, 380, 410, 490, 499, 574, 577, 609, 620, 637, 687. On several of these occasions, Claimant reported he was using the technique of walking away and ignoring his sister when she agitated him. R. 24-25, 490, 499, 577. In December 2011, Ms. Brooks observed Claimant was "slowly making progress." R. 25, 637. Additionally, in June 2012, Claimant's uncle told therapists that he "wasn't aware of any behavioral problems in the home lately" and in July 2012, Claimant's grandfather told therapists that Claimant still had anger issues although he showed improvement. R. 25, 574, 577. An ALJ may rely on evidence showing improvement of symptoms to make an adverse credibility finding. See Strickland v. Comm'r of Soc. Sec., 516 F. App'x 829, 832 (11th Cir. 2013) (affirming adverse credibility finding where medical opinions showed symptoms improved or at least did not corroborate

30

subjective complaints regarding limitations).  Accordingly, substantial evidence supports the ALJ's conclusion.

Third, while Plaintiff alleged that Claimant's medication caused side effects at the hearing, she consistently reported to Dr. Messulam that Plaintiff's medication did not cause any side effects, he was sleeping well, and his appetite was good.  R. 25, 253, 301, 345, 348, 352, 354, 355, 361, 363.  Moreover, therapists with Transitional Family Services, including Ms. Brooks, noted several times that Claimant was playing outside when they came to visit Claimant at home.  R. 398, 472, 541, 577, 580, 592, 611.

In sum, the ALJ properly reviewed Plaintiff's allegations of total disability with the medical evidence of record and properly found, based on substantial evidence, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of Claimant's symptoms were not consistent with the record and gave explicit and adequate reasons for his finding. Foote, 67 F.3d at 1561-62; Dyer, 395 F.3d at 1210-11.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 26th day of June, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

31